Matter of Kofman (2021 NY Slip Op 04550)





Matter of Kofman


2021 NY Slip Op 04550


Decided on July 28, 2021


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 28, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
FRANCESCA E. CONNOLLY, JJ.


2018-14559

[*1]In the Matter of Martin E. Kofman, a suspended attorney. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Martin E. Kofman, respondent. (Attorney Registration No. 2097913)



The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on January 14, 1987. By decision and order on motion dated July 31, 2019, this Court immediately suspended the respondent from the practice of law until further order of the Court pursuant to Judiciary Law § 90(4)(f) and 22 NYCRR 1240.12(c)(2)(ii), based upon his conviction of a serious crime as defined in Judiciary Law § 90(4)(d), and further directed the respondent to show cause at a hearing before Charles J. Thomas, as Special Referee, pursuant to 22 NYCRR 1240.12(c)(2)(iii), why a final order of suspension, censure, or disbarment should not be made based upon his conviction, upon a plea of guilty, in the United States District Court for the Southern District of New York, of conspiracy to make false statements to lenders, in violation of 18 USC § 371, a federal felony.



Diana Maxfield Kearse, Brooklyn, NY (Mark F. DeWan of counsel), for petitioner.
Michael S. Ross, New York, NY, for respondent.



PER CURIAM.


OPINION & ORDER
After a hearing on November 7, 2019, the Special Referee filed a report dated March 15, 2020, in which he reported the mitigating and aggravating factors and concluded that the respondent had failed to meet his burden in establishing why this Court should not issue a final order of public discipline. The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts now moves to confirm the report of the Special Referee, and for the imposition of such discipline upon the respondent as the Court deems appropriate. The respondent also moves to confirm the Special Referee's report, and requests that the Court impose a one-year suspension retroactive to the date of his interim suspension.
The Criminal Conviction
On August 9, 2017, in the United States District Court for the Southern District of New York, before the Honorable Lisa Margaret Smith, United States Magistrate Judge, the respondent pleaded guilty to conspiracy to make false statements to lenders, in violation of 18 USC § 371.
The respondent's conviction emanated from a November 13, 2014 indictment, which charged 15 individuals with a combined total of 21 counts of criminal misconduct, stemming from a conspiracy to fraudulently obtain more than $20 million in mortgage and other loans from 2004 to 2014. It was alleged that these individuals provided materially false information to lenders, such as false employment, income, bank account, and primary residence information in order to secure [*2]the loans. Subsequently, the majority of loans went into default, leaving millions of dollars in loan proceeds unpaid. It was further alleged that, among other things, some of the loan proceeds were used to pay the personal credit card debt, home mortgage payments, and other debt of some of those charged. Additionally, some of those indicted were allegedly receiving Medicaid and food stamps at various times during the conspiracy by claiming low monthly income, while simultaneously representing significant net worth and monthly income in order to obtain multimillion dollar loans.
One of the individuals charged in the indictment was Samuel Rubin, whose family had been a client of the respondent since the respondent opened his practice. The respondent represented Rubin in connection with a $7.6 million loan from Capital One Bank involving a property located in Brooklyn. As a condition precedent to securing the loan, Capital One Bank required Rubin, as the borrower, to satisfy a loan-to-value ratio of 75%, and as such, Rubin had to demonstrate that he was investing $2 million toward the loan.
On June 4, 2009, the respondent, at Rubin's behest, sent a letter to Capital One Bank representing that Rubin had deposited $2 million into the respondent's escrow account, which represented Rubin's share required to secure the loan. Although the funds were in fact deposited into the respondent's IOLA account on June 4, 2009, creating the appearance of Rubin's credit-worthiness for the loan, the funds in actuality came from a third party and were in fact removed from the respondent's IOLA account four days after the deposit.
Based upon this conduct, the respondent was charged with: (1) conspiracy to commit wire fraud, in violation of 18 USC §§ 1343 and 1349, a class C felony punishable by fine or imprisonment of not more than 20 years, or both; (2) conspiracy to commit bank fraud, in violation of 18 USC §§ 1344 and 1349, a class B felony punishable by a fine up to $1 million or imprisonment of not more than 30 years, or both; (3) making false statements to lenders, in violation of 18 USC § 1014, a class B felony punishable by a fine of not more than $1 million or imprisonment of not more than 30 years, or both; and (4) conspiracy to make false statements to lenders, in violation of 18 USC § 371, a class D felony punishable by a fine or imprisonment of not more than five years, or both.
In satisfaction of all charges, the respondent, on August 9, 2017, pleaded guilty to conspiracy to make false statements to lenders, in violation of 18 USC § 371, and on April 10, 2018, was sentenced by District Court Judge Kenneth M. Karas to a period of two years' probation and fined $500.
The Hearing
By way of background, the respondent testified that soon after starting his firm in 1993, a member of the Rubin family was referred to him. The Rubin family purchased multiple buildings throughout the city and grew to be one of his largest clients. The respondent would assist the Rubin family in its various real estate transactions by preparing and reviewing contracts, negotiating and dealing with lenders, and handling any refinance of its properties.
The respondent testified that in March 2008, he represented the siblings Samuel and Lipa Rubin in their purchase of a 98-family apartment building at a price of $11,025,000. In June 2009, the respondent was contacted by Samuel Rubin to restructure the debt, as the property had fallen into foreclosure and the lender needed to be paid before the foreclosure could be completed. Capital One Bank was engaged for the refinancing, and required that the loan-to-value ratio be not more than 75% of the value of the property, and that the remaining 25% be provided by the buyers on their own.
The respondent testified that Rubin requested that the restructure be done as a purchase as opposed to refinance using a newly formed entity owned by Rubin. Thereafter, the respondent prepared the contract with a purchase price of $9.6 million, which in turn enabled the Rubins to acquire a mortgage in the amount of $7.2 million. The respondent admitted that this was a misrepresentation because "it was in essence a refinance."
The respondent further testified that in order for the sale to be approved as a purchase transaction, Rubin still had to show his $2.4 million in equity; however, Rubin did not have the funds. At Rubin's request, the respondent was able to secure $2 million from a friend, but did so with the intent that the money would be immediately returned after sending the mortgage company evidence of the funds being on deposit. Additionally, the respondent and his friend agreed that the friend would send the money back to the respondent for the day of the closing, with the respondent again returning the money to the friend immediately afterwards. The respondent testified that, after he received the money, he wrote a letter to the bank confirming that he was holding $2 million on [*3]behalf of Rubin. The respondent further testified that although the loan had been already paid back by the time of his arrest in 2014, it was discovered by authorities during an investigation into the Rubins for other crimes unrelated to this transaction.
The respondent admitted committing the crime in part to help his long-term clients, but that it was also in part borne out of greed. The respondent explained that in addition to the shame his action brought to himself, his family, and the legal community, it was something he had to reconcile with his faith.
Findings and Conclusion
We find that the Special Referee properly concluded that the respondent failed to meet his burden of establishing why this Court should not issue a final order of public discipline. Accordingly, the branches of the petitioner's motion and the respondent's motion which are to confirm the report of the Special Referee are granted.
In determining an appropriate measure of discipline, we find that the respondent's actions in securing a loan for his client by knowingly misleading the lender as to his client's financial status is misconduct involving fraud and deceit. Such conduct strikes at the heart of the public's trust and is antithetical to the foundation of what is required of lawyers. Notwithstanding, the Court has considered that there is extraordinary evidence here in mitigation. The respondent has demonstrated an impressive and laudable commitment to public service through the multiple charitable organizations with which he is involved, including some dealing with the most vulnerable members of his community. This commitment to community service was not just spawned after suddenly facing criminal or disciplinary penalties, but rather was found by both the criminal sentencing judge and by the Special Referee to be a genuine and longstanding part of the respondent's life. Additionally, among other things, the Court notes that the respondent has expressed genuine remorse for his conduct and has no prior disciplinary history.
Under the totality of the circumstances, we conclude that the respondent's criminal conduct warrants a suspension from the practice of law for a period of two years, with credit for the time elapsed under the decision and order on motion of this Court dated July 31, 2019 (see Matter of Saraco, 164 AD3d 69; Matter of Duoba, 227 AD2d 69).
LASALLE, P.J., MASTRO, RIVERA, DILLON and CONNOLLY, JJ., concur.
ORDERED that the branches of the petitioner's motion and the respondent's motion which are to confirm the Special Referee's report are granted, and the respondent's motion is otherwise denied; and it is further,
ORDERED that the respondent, Martin E. Kofman, is suspended from the practice of law for a period of two years, with credit for the time elapsed under the decision and order on motion of this Court dated July 31, 2019, and continuing until further order of this Court. The respondent may immediately apply for reinstatement. In such application (see 22 NYCRR 691.11, 1240.16), the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11, and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Martin E. Kofman, shall continue to comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Martin E. Kofman, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Martin E. Kofman, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court